UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTIAGO VELASCO BAUTISTA,<br>Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>Defendant. | Case No. 2:17-cv-03734-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Santiago Velasco Bautista ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security finding him not disabled for purposes of entitlement to Disability Insurance Benefits ("DIB"), following a closed period of disability. [Dkt. 1.] The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 11] and briefs addressing disputed issues in the case [Dkt. 18 ("Pl. Br."), Dkt. 23 ("Def. Br."), and Dkt. 24 (Pl. Rep.)]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be remanded for additional proceedings.

/ / /

/ / /

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On May 21, 2013, Plaintiff filed an application for DIB, alleging disability as of June 16, 2011. [Dkt. 15, Administrative Record ("AR") 37, 223-29.] Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 37, 112-18, 120-24.] A hearing was held before Administrative Law Judge Joel B. Martinez ("the ALJ") on September 28, 2015. [AR 61-88.] In a decision dated November 13, 2015, the ALJ determined that Plaintiff was disabled for the closed period from June 16, 2011, through February 21, 2013, and that medical improvement occurred and Plaintiff's disability ended on February 22, 2013. [AR 37-53.]

In determining that Plaintiff was disabled for the closed period, the ALJ found that Plaintiff was disabled. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 16, 2011, the alleged onset date. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: history of traumatic brain injury with subarachnoid hemorrhage, post concussive disorder; chronic diplopia, ptosis of the left eye with optic nerve cupping in both eyes, bilateral tinnitus with hearing loss, sprain and strain of the cervical and thoracic spine, and diabetes mellitus from June 16, 2011, through February 21, 2013. Next, the ALJ determined that Plaintiff's history of hypertension, depression and anxiety were not severe impairments during that period, but the severity of Plaintiff's traumatic brain injury met the criteria of section 11.00(F) of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") from June 16, 2011 through February 21, 2013. [AR 40-43]; *see* 20 C.F.R. § 404.1520(d).

Next, the ALJ applied the medical improvement regulations in determining that Plaintiff's period of disability had ended. [AR 43-53]; *see* 20 C.F.R. § 404.1594.[1] The ALJ found that Plaintiff's impairments did not meet or medically

---

[1] The Commissioner has established an eight-step sequential evaluation process for determining whether a claimant's impairments have sufficiently improved to

2

equal the severity of one of the impairments in the Listings since February 22, 2013. [AR 45.] The ALJ found that medical improvement occurred on February 22, 2013, and the medical improvement was related to Plaintiff's ability to work. [*Id.*] The ALJ found that as of February 22, 2013, Plaintiff had the same severe impairments that he had from June 16, 2011, through February 21, 2013, but Plaintiff had developed slight vertigo since February 22, 2013, and Plaintiff's medically determinable impairments of hypertension, hyperlipidemia, and depression were not severe impairments. [AR 40, 43.] The ALJ found that beginning on February 22, 2013, Plaintiff had the residual functional capacity ("RFC") to perform the following: lift and/or carry 50 pounds occasionally and 25 pounds frequently; sit (with normal breaks) for 6 hours in an 8-hour workday; stand and/or walk (with normal breaks) for 6 hours in and 8-hour workday; perform all postural activities occasionally; and perform simple to moderately complex work. [AR 45-46.] The ALJ further found that Plaintiff should avoid hazards, work around unprotected heights, exposure to extreme temperature, and loud noise environments. [AR 46.] The ALJ determined that Plaintiff was unable to perform his past relevant work as a maintenance repairer, plumber, or construction worker since February 22, 2013. [AR 51-52.] Finally, the ALJ determined that beginning on February 22, 2013, Plaintiff could perform jobs existing in significant numbers in the national economy, including representative occupations such as sandwich maker and hand packager. [AR 52-53.] Therefore, the ALJ concluded that Plaintiff's disability ended on

---

warrant cessation of benefits. *See* 20 C.F.R § 404.1594(f). The eight steps are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals a listed impairment; (3) whether medical improvement has occurred; (4) whether the medical improvement is related to the claimant's ability to work; (5) whether any exception to the medical improvement standards apply; (6) whether the claimant's current impairments in combination are severe; (7) whether the claimant can perform past relevant work with the claimant's current RFC; and (8) whether the claimant can perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and past work experience. *Id.*

February 22, 2013. [AR 45, 53.]

The Appeals Council denied review of the ALJ's decision on March 29, 2017. [AR 3-5.] This action followed.

Plaintiff challenges the ALJ's decision, as follows:

1. The ALJ erroneously rejected medical evidence establishing that Plaintiff's mental impairment was a severe impairment.
2. The ALJ's RFC assessment failed to adequately account for all of the medical evidence.
3. The ALJ failed to properly evaluate Plaintiff's testimony.
4. The ALJ failed to make proper findings to establish the existence of a medical improvement.
5. The vocational expert's testimony reflects error.

[Pl. Br. at 1-18; Pl. Rep. at 1-10.]

Plaintiff requests reversal and remand for payment of benefits or, in the alternative, remand for further administrative proceedings. [Pl. Br. at 19.]

The Commissioner asserts that the ALJ's decision should be affirmed. [Def. Br. at 23.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

### IV. DISCUSSION

Plaintiff contends the ALJ erroneously rejected the opinions of two of his

examining doctors, psychologist Dr. Marcel Ponton and neurologist Dr. Robert Shorr, in evaluating the severity of his mental impairment. [Pl.'s Br. at 1-5; Pl. Rep. at 1-5; AR 41, 45.] Specifically, Plaintiff asserts that the ALJ erred by failing to "regard [his] depression as a severe impairment, either before, during or after the end of the closed period (AR 41, 44)."[2] [Pl. Br. at 2.]

In November 2014, Dr. Shorr completed an agreed medical evaluation in neurology in connection with a claim that Plaintiff had for workers' compensation benefits. [AR 802-37.] Plaintiff reported numerous physical complaints and difficulties with activities of daily living and complained that he felt "anxious and depressed because of his ongoing disability." [AR 806-08.] Dr. Shorr confirmed that Plaintiff appeared to be somewhat anxious and depressed on examination and found that Plaintiff's score of 28 on the Beck Depression Inventory Scale was consistent with moderate depression. [AR 808, 810.] Dr. Shorr also found there was evidence that Plaintiff had a mood disturbance. [AR 810, 833.] In regard to activities of daily living, Dr. Shorr noted Plaintiff had significant difficulties with writing, speaking, hearing, and a variety of physical activities. [AR 807-08.] Dr. Shorr concluded that Plaintiff needed a complete psychiatric workup. [AR 833.].

In July 2015, Dr. Ponton completed a comprehensive neuropsychological evaluation of Plaintiff in connection with Plaintiff's workers' compensation case. [AR 839-57.] Dr. Ponton diagnosed Plaintiff with, *inter alia*, cognitive disorder NOS (secondary to traumatic brain injury), pain disorder associated with both psychological factors and a general medical condition, and mood disorder (due to traumatic brain injury) with mixed emotional features (depression and anxiety) and assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 50.

---

[2] Although the ALJ granted Plaintiff disability benefits for the closed period from June 16, 2011, through February 21, 2013, Plaintiff appears to challenge the ALJ's findings that Plaintiff's mental impairment was not a severe impairment both during and after the closed period. [Pl. Br. at 2; Reply at 1.]

5

[AR 852-53.] Neuropsychological testing revealed the following objective factors of disability: impaired to average attention and concentration; impaired to average intellectual functioning; borderline to low average language functions; impaired verbal memory; impaired to low average executive functioning; borderline reasoning skills; severe anxiety; severe depression; and moderate hopelessness. [AR 851.] Dr. Ponton also noted the presence of "a psychogenic component related to [Plaintiff's] multiple difficulties, which involves severe depression and severe anxiety." [AR 852.] Dr. Ponton opined that Plaintiff had "moderate" limitations in activities of daily living, concentration, persistence and pace, and adaptation. [AR 856.]

The ALJ disregarded Dr. Shorr's and Dr. Ponton's assessments of Plaintiff's mental impairment without offering adequate reasons for doing so. An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician and specific and legitimate reasons supported by substantial evidence to reject the contradicted opinion of a treating or examining physician. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

In the decision, although the ALJ summarized many of Dr. Shorr's findings from his neurology evaluation and noted Plaintiff's complaints of anxiety and depression, the ALJ did not even mention Dr. Shorr's findings of mood disturbance, moderate depression, and limitations in activities in daily living. [AR 48, 808, 810, 833.] The ALJ's failure to provide any analysis or legally sufficient reasons for disregarding these aspects of Dr. Shorr's opinion was error. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical

opinion over another, he errs."); *Lester*, 81 F.3d at 830-31.[3]

The Commissioner attempts to support the ALJ's implicit rejection of Dr. Shorr's opinion based on reasons not cited by the ALJ. [Def. Br. at 5-6.] The Commissioner argues that the ALJ's consideration of Dr. Shorr's opinion was proper because his findings relating to Plaintiff's depression and difficulties with activities of daily living were based on Plaintiff's own complaints, Dr. Shorr failed to identify any functional limitations specifically related to depression, and Plaintiff's mental status examination indicated that Plaintiff was alert and oriented with no abnormalities noted. [Def. Br. at 5-6.] Although it is possible that the ALJ might have rejected Dr. Shorr's assessment of Plaintiff's mental impairments for the reasons cited by the Commissioner, the ALJ's decision cannot be affirmed based on the Commissioner's post hoc rationalizations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency"). And, given the ALJ's failure to even mention Dr. Shorr's findings of mood disturbance, moderate depression, and

---

[3] In the decision, the ALJ noted: "Dr. Shorr opined that the claimant remained 'temporarily totally disabled' for the purposes of workers' compensation claim." [AR 49, 832.] To extent the ALJ may have dismissed Dr. Shorr's opinion concerning Plaintiff's mental impairment simply because it was generated in connection with Plaintiff's workers' compensation case, he erred. [AR 49-50; Pl. Br. at 3-4.] An ALJ must give a medical opinion prepared for a workers' compensation case proper consideration. *See Lester*, 81 F.3d at 832 ([t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them"); 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). "[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)

7

limitations in activities in daily living, the Court cannot conclude that the ALJ's error was harmless. *See Molina*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'") (quoting *Carmickle*, 533 F.3d at 1162).

Regarding Dr. Ponton, the ALJ stated that he gave his evaluation "little weight," as it was "inconsistent with the record as a whole" and "contradicted by [Plaintiff's] own testimony at the hearing." [AR 44.] The ALJ failed to state adequate reasons for rejecting Dr. Ponton's opinion. First, the ALJ's finding that Dr. Ponton's opinion was "inconsistent with the record as a whole" is impermissibly broad and conclusory. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (same). While the ALJ thoroughly summarized Dr. Ponton's findings in the decision, the ALJ failed to specifically explain how such findings conflicted with "the record as a whole." [AR 44.] Moreover, there is medical evidence in the record evidencing the severity of Plaintiff's mental impairment both during and after Plaintiff's closed period of disability. Plaintiff's treating physicians repeatedly noted Plaintiff suffered from anxiety and depression. [AR 449, 452, 454, 456, 457, 469, 475, 477, 479, 482, 491, 496, 632, 635, 643, 647.] In March 2012, an examining pain medicine physician reported that Plaintiff's examination and psychometric test results showed Plaintiff was experiencing a severe level of anxiety, moderate amount of catastrophic thinking, and severe level of disability. [AR 438-39.] In November 2014, an examining otolaryngologist found that Plaintiff's difficulties with hearing loss caused Plaintiff anxiety and a lack of emotional well-being. [AR 793.] And, as noted, Dr. Shorr

8

found evidence of mood disturbance, moderate depression, and limitations in activities in daily living. Thus, the ALJ's conclusion that Dr. Ponton's opinion was inconsistent with the record evidence is not an adequate reason for rejecting his opinion.

Second, the ALJ's finding that Dr. Ponton's opinion was "contradicted by [Plaintiff's] own testimony at the hearing" is not supported by the record. [AR 44.] In the decision, the ALJ asserted that Plaintiff testified that his depression was "short-lived," he "has never taken any psychiatric medication, and he was only practicing 'exercises' recommended by the psychiatrist to help him get over the depression" and "those 'exercises' helped." [AR 44.] The ALJ, however, misstates Plaintiff's testimony regarding his problems with depression. Plaintiff never described his depression as "short-lived." Rather, Plaintiff testified about a recurring problem with depression. When asked if he was feeling better since his accident, Plaintiff testified, "Sometimes I get depression. That kills me." [AR 74.] Plaintiff also testified: "I remember the exercises that the psychologist told me to do and then I forget [the depression]. . . ."[b]ut at times it appears again." [AR 79.] And, while Plaintiff was not being treated by a psychiatrist or taking psychiatric medication at the time of the hearing, he testified that he had seen a psychiatrist for a "short time" and his doctors were trying to find him a psychologist. [AR 66, 79- 80.] Thus, contrary to the ALJ's finding, Plaintiff's testimony did not conflict with Dr. Ponton's assessment.

Given the ALJ's improper consideration of Drs. Shorr's and Ponton's opinions, the ALJ's determination that Plaintiff's mental impairment was not a severe impairment is not supported by substantial evidence. "An impairment or combination of impairments may be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28); *see also* 20 C.F.R. §§

9

404.1520(a)(4)(ii), 404.1594(f). In finding that Plaintiff's depression was not severe both during the closed period of disability and after the alleged date of medical improvement, the ALJ cited Plaintiff's testimony describing his depression as "short-lived," Plaintiff's failure to take psychiatric medication, and Plaintiff's use of exercises to treat depression. [AR 41, 44.] However, as discussed above, the ALJ misstated Plaintiff's hearing testimony, which actually reflected that Plaintiff was experiencing a recurring problem with depression and was waiting for psychological treatment. [AR 44, 66, 79-80.]

The Commissioner argues that the ALJ accounted for the moderate limitations assessed by Dr. Ponton by limiting Plaintiff to "moderately complex work" in the RFC assessment and identifying unskilled work that Plaintiff could perform since his alleged medical improvement date of February 22, 2013. [Def. Br. at 7; AR 46.] This argument lacks merit, as it is apparent that the ALJ did not account for the limitations assessed by Dr. Ponton. Significantly, in assessing the severity of Plaintiff's mental impairment and ability to perform work-related functions after the alleged medical improvement date, the ALJ disregarded Dr. Ponton's opinion that Plaintiff had borderline to low average language functions, borderline reasoning skills, impaired verbal memory, and impaired to low average executive functioning skills. [AR 44, 848-51.] The ALJ also rejected Dr. Ponton's findings that Plaintiff had moderate limitations in activities of daily living, concentration, persistence and pace, and adaptation. [AR 44-45, 856.] The limitations identified by Dr. Ponton are probative as to Plaintiff's mental capacities and ability to work. The ALJ did not adequately address Dr. Ponton's opinion simply by finding Plaintiff capable of "moderately complex" work or by identifying unskilled jobs. [AR 46, 848-52, 856.]

Accordingly, ALJ's rejection of the Drs. Shorr's and Ponton's opinions and the ALJ's determination that Plaintiff's mental impairment was not a severe impairment are not supported by substantial evidence.

# V. CONCLUSION

Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Commissioner of Social Security Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). The Court has the discretion to credit as true improperly rejected evidence and remand for payment of benefits where the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also Treichler*, 775 F.3d at 1100-01. But even where all three factors of this "credit-as-true" rule are met, the Court retains discretion to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

Here, the ALJ's assessment of Plaintiff's mental impairment did not reflect adequate consideration of Dr. Shorr's and Dr. Ponton's opinions. Because questions regarding the extent to which Plaintiff's mental impairment limits his ability to work remain unresolved, the record has not been fully developed and remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for further proceedings is appropriate when the record is not "fully developed"). On remand, the ALJ should reassess the Dr. Shorr's and Dr. Ponton's opinions with respect to Plaintiff's mental impairment. The ALJ must explain the weight afforded to these medical opinions and provide legally adequate reasons for rejecting or discounting them. If the ALJ determines it

is warranted, the ALJ shall order a consultative examination with an appropriate mental health specialist and a review of the medical evidence relevant to Plaintiff's mental impairment by a state agency medical consultant and/or medical expert. Because this matter is being remanded for reassessment of the severity of Plaintiff's mental impairment and related medical opinion evidence, the Court does not reach the remaining issues raised by Plaintiff, except as to determine that reversal with the directive for immediate payment of benefits for the period after the alleged medical improvement date would not be appropriate at this time.[4] However, the ALJ should address Plaintiff's additional contentions of error when evaluating the evidence on remand.

Accordingly, remand for additional proceedings is appropriate.

**IT IS ORDERED.**

DATED: July 24, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

---

[4] Nothing in this decision is intended to disturb the ALJ's finding that Plaintiff was disabled during the closed period of disability from June 16, 2011, through February 21, 2013.